IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ALVARO MARTINEZ-FELIX, | § | |
| Institutional ID No. 17765-030, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:21-CV-282-BQ |
| | § | |
| MANAGEMENT & TRAINING | § | |
| CORPORATION (MTC), *et al.*, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Proceeding pro se and *in forma pauperis*, Plaintiff Alvaro Martinez-Felix alleges violations of his constitutional rights during his incarceration at the Giles W. Dalby Correctional Facility (Dalby Unit).  The Dalby Unit is a private correctional facility operated by Management & Training Corporation (MTC) pursuant to a contract with the Federal Bureau of Prisons (BOP).[1] Martinez-Felix seeks monetary damages, as well as declaratory and injunctive relief.  Compl. 5, 9–10, ECF No. 1.[2]  He also asks the Court to order an investigation, initiate criminal charges, require Dalby Unit officials to respect inmates, and direct reimbursement of taxes paid on commissary items.  *Id.* at 4, 9.

Martinez-Felix filed his Complaint on November 9, 2021 (ECF No. 1), and the United States District Judge subsequently transferred this case to the undersigned United States Magistrate Judge for further proceedings.  ECF No. 7.  The undersigned thereafter reviewed Martinez-Felix's

---

[1] *See Giles W. Dalby Correctional Facility*, MGMT. & TRAINING CORP., https://www.mtctrains.com/facility/giles-w-dalby-correctional-facility (last visited July 12, 2022).

[2] Page citations to Martinez-Felix's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

Complaint and authenticated records from the Dalby Unit, and ordered Martinez-Felix to complete a questionnaire in accordance with *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he timely completed and returned.  ECF Nos. 8, 10, 13, 15.

Not all parties have consented to proceed before the undersigned magistrate judge.  After considering the allegations in Martinez-Felix's Complaint, his responses to the questionnaire, authenticated records from the Dalby Unit, and applicable law, the Court concludes that Martinez-Felix's claims in this action must be dismissed for failure to state a claim in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## I.     Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).  A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories.  *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).  When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records.  *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated

into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A. Martinez-Felix's allegations.

In his Complaint, Martinez-Felix names the following Defendants: (1) MTC; (2) Dalby Unit; (3) "Doe John, Warden, Health Service Administrator"; (4) "Doe John, Clinica [sic] Director"; (5) "Doe John, Medical Personnel"; (6) Dr. Reddick; (7) K. Hills; and (8) D. Romero. Compl. 1–2, 8–9. Through his questionnaire responses, Martinez-Felix names as additional Defendants: (1) the Dalby Unit Warden;[3] (2) Dr. Flores; and (3) Nurse Flores. Questionnaire 9–10, 13, ECF No. 15. It appears from Martinez-Felix's pleadings that the foregoing Defendants are all employed at the Dalby Unit. *See* Compl. 1–2, 8–9; Questionnaire 5, 9–10, 13.

Martinez-Felix's principal claim relates to an alleged denial of adequate medical care. Martinez-Felix contends that upon his arrival to the Dalby Unit in August 2018, he requested medical treatment for an abscess in his rectal area, which was causing various symptoms. Compl.

---

[3] It is unclear from Martinez-Felix's pleadings whether this is the same individual as the Warden listed in his Complaint.

5–8.  Martinez-Felix acknowledges that Dalby medical personnel "evaluated and treated [him] regularly."  *Id.* at 6.  But according to Martinez-Felix, on March 22, 2020, staff "mistakenly determined that [his] serious medical problems" were the result of a previous gunshot wound.  *Id.* (cleaned up); Questionnaire 2, 4.  Further, Martinez-Felix alleges that staff failed to refer him to a specialist.  Compl. 6, 8; Questionnaire 3.[4]  Martinez-Felix believes that a specialist could have prescribed a diagnostic test to determine if Martinez-Felix was eligible for surgery.[5]  Questionnaire 3.

Martinez-Felix also explains that staff diagnosed him as having a hydrocele after he reported having pain in his testicles.  Compl. 6; Questionnaire 5.  He confirms that a urologist performed surgery to drain the hydrocele on April 29, 2021, but maintains he continues to experience pain and Dalby Unit medical personnel will not provide follow-up treatment.  Compl. 6, 8; Questionnaire 5.  Martinez-Felix concedes, however, that after his surgery, he received the following care:  (1) on May 11, Dalby medical staff removed a scrotal drain and placed him on antibiotics due to yellow drainage from the wound site; (2) on June 11, he attended a follow-up examination by the urologist; and (3) on July 1, Dalby medical personnel prescribed Tylenol in response to his complaints of groin pain.  Questionnaire 6.  Despite receiving this care, Martinez-Felix appears to contend that staff delayed in treating the hydrocele.  *Id.* at 7 ("[T]hey should have sent me to a urologist immediately and they should of [sic] prescribed me some medication.").  This delay in care, Martinez-Felix alleges, caused him psychological harm.  *Id.*

---

[4] Martinez-Felix's pleadings contain many contradictions.  For example, in his Complaint Martinez-Felix asserts Dalby Unit medical staff failed to refer him to a specialist (Compl. 6), but in his questionnaire responses, he states that staff did in fact refer him on June 12, 2020.  Questionnaire 4.  Further, Martinez-Felix alleges that medical staff both prescribed and did not prescribe him medication for his serious medical needs.  *See* Compl. 6; Questionnaire 4.

[5] Despite so alleging, Martinez-Felix agrees that he attended outside consultation appointments with general surgeons related to a possible ileostomy reversal.  Questionnaire 8.

Martinez-Felix attributes the alleged lack of medical care in part to Dr. Reddick.  *See id.* at 8–9.  Further, Martinez-Felix asserts that Dr. Reddick falsified Dalby Unit records, listing "multiple inmate deaths at Dalby as a result of COVID, when [the inmates actually] died as [a] result of medical neglect by staff."  *Id.* at 8; *see* Compl. 8 (alleging that the Dalby Unit medical staff, including Dr. Reddick, "[r]ubber [s]tamp[s] inmates [sic] medical records to avoid spending any additional funds to administer the proper care").

Martinez-Felix also alleges that in March 2020, Dr. Flores and Nurse Flores discontinued his "pain medication approved for years with the BOP" and told him to obtain the medication from the commissary, where inmates have to pay tax on items.  Compl. 8; Questionnaire 10.  According to Martinez-Felix, these medications included ibuprofen, acetaminophen, allergy pills, and hemorrhoid cream.  Questionnaire 10.  Martinez-Felix attributes the purported improper taxation of commissary items, including medications, to the Dalby Unit Warden.  *Id.* at 13.

In addition, Martinez-Felix avers that in 2019, the Dalby Unit Warden caused grievances to "mysteriously disappear."  Compl. 8; Questionnaire 9.  Martinez-Felix bases his allegation on the Warden's ostensible failure to respond to his grievances.  Questionnaire 9.  Martinez-Felix maintains that the Warden's failure to respond to his grievances violated his due process rights, as well as his right to access the courts, but Martinez-Felix provides no factual support for his allegations.  *Id.* at 10.

Further, Martinez-Felix asserts that Dalby Unit officials violated the Health Insurance Portability and Accountability Act (HIPAA), "appoint[ed] other inmates to assault" inmates, and violated MTC and/or BOP policies.  Compl. 8–9; Questionnaire 11–13.  Martinez-Felix also makes vague references to Dalby Unit officials improperly acting based on inmates' age, race, nationality, or ethnicity, though he does not provide specific facts.  *See* Compl. 8–9; Questionnaire 10.  And

while he names K. Hills and D. Romero in his Complaint, Martinez-Felix pleads no facts against them, despite being provided the opportunity to do so.  Compl. 9; Questionnaire 13–14.

Finally, Martinez-Felix indicates that in addition to suing for purported violations of his civil rights, he is asserting claims under the Federal Tort Claims Act (FTCA), as well as "[s]tate law."  Compl. 7.  Martinez-Felix did not, however, present his tort claims to the BOP.  *See* Questionnaire 1–2.  Instead, he maintains that he exhausted MTC's grievance process in 2019.  *Id.*

**B. The Court lacks jurisdiction over Martinez-Felix's FTCA claims.**

Initially, the Court observes that Martinez-Felix does not name the United States as a Defendant—he only names the Dalby Unit and the individual employees thereof.  *See* Compl. 1– 2, 8–9; Questionnaire 1–16.  "FTCA claims may be brought against only the United States, and not the agencies or employees of the United States."  *Esquivel-Solis v. United States*, 472 F. App'x 338, 339 (5th Cir. 2012) (per curiam).  For this reason alone, the United States District Judge should dismiss Martinez-Felix's FTCA claims for want of jurisdiction.[6]  *Id.* ("An FTCA claim brought against a federal agency or employee rather than the United States shall be dismissed for want of jurisdiction.").

Moreover, even if Martinez-Felix had named the United States as a defendant to his claims, the Court would nevertheless lack jurisdiction.  "The FTCA provides a limited waiver of sovereign immunity."  *Hanna v. United States*, No. 20-30581 consol. with No. 21-30410, 2021 WL 5237269, at *1 (5th Cir. Nov. 10, 2021) (per curiam).  To maintain a suit in district court against the United States, a plaintiff must have "file[d] an administrative claim with the appropriate federal agency

---

[6] As apparent employees of MTC, it is possible that Defendants are independent contractors under the law.  In that case, the United States has not waived sovereign immunity.  28 U.S.C. § 2671; *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) ("The FTCA . . . does not extend to acts of independent contractors.  Therefore, if the act was not committed by an employee of the Government, then the court must dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." (internal quotation marks and citations omitted)).

within two years after such claim accrues *and* . . . either (1) obtained a written denial, or (2) . . . not receive[d] a response within six months." *Id.* Thus, "[a]n FTCA action cannot proceed 'unless the claimant shall have first presented the claim to the appropriate Federal agency.'" *Bolton v. United States*, 946 F.3d 256, 259–60 (5th Cir. 2019) (quoting 28 U.S.C. § 2675(a)).

Martinez-Felix has not demonstrated that he filed an administrative claim with the appropriate federal agency. Questionnaire 1–2. Instead, he maintains that he exhausted MTC's and/or BOP's grievance procedure. *Id.* "The BOP's FTCA claims procedure is separate from the BOP's administrative remedies procedure." *Lopez-Heredia v. Univ. of Tex. Med. Branch Hosp.*, 240 F. App'x 646, 647 (5th Cir. 2007) (per curiam). Because Martinez-Felix has not shown he notified the appropriate federal agency and exhausted the FTCA claim process, the Court lacks jurisdiction over his claims.[7] The undersigned therefore recommends that the United States District Judge dismiss without prejudice Martinez-Felix's FTCA claims.

### C. Martinez-Felix cannot state a cognizable constitutional claim based on Defendants' alleged HIPAA violations.

Martinez-Felix contends that the Dalby Unit did not have "[S]panish-speaking medical staff . . . , so he had to have inmates write medical requests for him in [E]nglish, or utilize a [S]panish" correctional officer. Questionnaire 11. That is, Martinez-Felix alleges he had to communicate personal medical information to other inmates or Dalby Unit staff because of the lack of Spanish-speaking medical personnel. *See id.*; *see also* Compl. 8 (asserting that "medical requests" are "review[ed] by several inmates before [being] delivered . . . to medical staff(s)").

---

[7] Martinez-Felix knew of the facts giving rise to his tort claims in the spring of 2019. *See* Questionnaire 1. Thus, the statute-of-limitations expired in the spring of 2021. *Huerta v. United States*, 384 F. App'x 326, 328 (5th Cir. 2010) (per curiam) ("The FTCA applies a two year statute of limitations that runs from the date a cause of action accrues."); *see* 28 U.S.C. § 2401(b). At this juncture, his claims are likely time-barred.

The Fifth Circuit has held, however, that "there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction over [a private individual's] asserted [HIPAA] claims." *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) (per curiam); *see Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010) ("HIPAA itself provides no private right of action." (citation omitted)); *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (per curiam) ("Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action.").

Because Martinez-Felix cannot state a viable claim based on the alleged HIPAA violations, the district judge should dismiss same. *See, e.g.*, *Fox v. United States*, No. 3:10–cv–126 DPJ–MTP, 2012 WL 2685067, at *2 (S.D. Miss. July 6, 2012) (concluding the court lacked jurisdiction over plaintiff's HIPAA claim); *Evans v. Brisolara*, No. 1:09CV485–RHW, 2010 WL 1257862, at *2 (S.D. Miss. Mar. 26, 2010) (dismissing prisoner's HIPAA claims "because HIPAA regulations do not create a private cause of action").

**D.  The Court construes Martinez-Felix's remaining claims as arising under *Bivens*.**

Martinez-Felix filed his Complaint on a form used for claims brought under 42 U.S.C. § 1983.  *See* ECF No. 1.  Section 1983 "provides a cause of action against state actors who violate an individual's rights under federal law." *Filarsky v. Delia*, 566 U.S. 377, 380 (2012).  None of the defendants named by Martinez-Felix—employees at a private facility operated on behalf of BOP—are state actors.  *See, e.g.*, *Barnett v. GEO Grp., Inc.*, No. 1:15-CV-224-BL, 2017 WL 3896363, at *2 (N.D. Tex. Aug. 10, 2017) (explaining that employees of a private prison facility are not state actors for the purpose of evaluating a federal prisoner's civil-rights claims, which are properly examined under *Bivens*), *R. & R. adopted by* 2017 WL 3887914 (N.D. Tex. Sept. 5, 2017); *Mayberry v. Aragor*, No. 3:11–CV–0333–K–BH, 2011 WL 4485775, at *2 (N.D. Tex. Sept. 6,

2011) (citing *Lyons v. Sheetz*, 834 F.2d 493, 495 (5th Cir. 1987)) ("Plaintiff fails to state a § 1983 claim against the defendants because they are all federal employees and officials and are not state actors acting under color of state law."), *R. & R. adopted by* 2011 WL 4485927 (N.D. Tex. Sept. 27, 2011).

Courts, however, must hold a pro se litigant's complaint to less stringent standards than a lawyer's formally drafted pleading.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. Unit A Feb. 1981).  Because Martinez-Felix complains of constitutional violations that allegedly occurred during his incarceration as a federal prisoner, the Court liberally construes his allegations as an attempt to assert claims in accordance with 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  *See Stephenson v. Reno*, 28 F.3d 26, 26 n.1 (5th Cir. 1994) (construing a federal prisoner's civil-rights complaint as an action brought under *Bivens*); *see also United States v. Santora*, 711 F.2d 41, 42 n.1 (5th Cir. 1983) (noting that courts must consider the essence of a pro se prisoner's claims rather than the label attached).

*Bivens* generally extends the protections afforded under § 1983 to parties injured by federal actors.  *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 948–49 & n.36 (5th Cir. 2003) ("A *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials.").  Since its decision in *Bivens*, however, the Supreme Court has significantly narrowed its holding to recognize *Bivens* actions in only three scenarios:  (1) a Fourth Amendment unreasonable search and seizure of a plaintiff's home by federal narcotics agents; (2) "a former congressional staffer's Fifth Amendment sex-discrimination claim"; and (3) "a federal prisoner's inadequate-care claim under the Eighth

Amendment." *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022); *see Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).

Expanding *Bivens* to permit relief beyond these three specific causes of action is "a disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks and citation omitted). Thus, when a plaintiff presents a potential *Bivens* claim in a new context, a court must engage in a two-step inquiry asking: (1) whether the case is "meaningfully different from the three cases in which the Court has implied a damages action" previously; and if so, (2) are there "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (alterations omitted) (quoting *Ziglar*, 137 S. Ct. at 1859–60). As the Court has most recently recognized, however, "while [its] cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* Further, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure," even if such a holding would provide a plaintiff with inadequate or incomplete relief. *Id.* at 1804 (internal quotation marks and citation omitted).

    *1. Martinez-Felix seeks relief that is unavailable in a* Bivens *action.*

In addition to monetary damages, Martinez-Felix asks the Court to grant the following relief:

1. "[A] thorough investigation" into the practices at Dalby Unit;

2. Criminal charges against "the executive heads of MTC/[Dalby Unit] . . ."; and

3. "[R]espect the rights, health and human dignity from the inmates from discriminatory practices that implement this private companies to get to increase profits [sic all]."

Compl. 5, 9.[8]

A plaintiff cannot obtain non-monetary relief through a *Bivens* action.  *See, e.g.*, *Berk v. Wiggins*, No. 3:18-CV-2301-X-BN, 2020 WL 6528937, at *3 (N.D. Tex. Oct. 6, 2020) ("To the extent that [plaintiff] seeks non-monetary relief . . . such relief is unavailable through this [*Bivens*] action . . . ."), *R. & R. adopted by* 2020 WL 6505017 (N.D. Tex. Nov. 5, 2020); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."); *Gunter v. Wheeler*, No. A-17-CV-0136-RP, 2017 WL 3670017, at *3 (W.D. Tex. Aug. 23, 2017) ("[C]laims for declaratory and injunctive relief which, if granted, would result in the Court mandating official government action, are not cognizable in a *Bivens* action.").  Thus, Martinez-Felix's requests that the Court order an investigation, criminally charge Defendants, and require Dalby Unit officials to respect inmates, are not cognizable and should be dismissed.[9]

### 2.  MTC and the Dalby Unit, as private entities, are not proper Defendants.

Martinez-Felix names MTC and the Dalby Unit—private entities—as Defendants.  Compl. 1.  Under *Bivens*, however, only *individuals* acting under color of federal law may be liable for unconstitutional conduct.  *See* 403 U.S. at 389; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 515, 70 (2001) ("The purpose of *Bivens* is to deter *individual* federal officers from committing constitutional violations." (emphasis added)).  Moreover, the Supreme Court has expressly declined to extend *Bivens* to private corporations.  *Malesko*, 534 U.S. at 70–71 (holding that *Bivens* does not extend to suits against private corporations operating under contract with the federal

---

[8] The Court addresses Martinez-Felix's request for reimbursement of taxes (*see* Compl. 9) in Section II.D.6 below.

[9] Moreover, Martinez-Felix possesses no right to have someone criminally prosecuted, and he cannot enforce criminal statutes through a civil request for relief.  *See, e.g.*, *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (stating that there is no "constitutional right to have someone criminally prosecuted"); *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007) ("Simply, a private citizen cannot enforce criminal statutes in a civil action.").

government).  Thus, Martinez-Felix cannot maintain suit against MTC or the Dalby Unit.  The undersigned recommends dismissal of these Defendants.  *See, e.g.*, *Rodriguez v. Giles W. Dalby Corr. Facility*, 552 F. App'x 382, 383 (5th Cir. 2014) (per curiam) (explaining that because the Dalby Unit "is a private facility, no *Bivens* action is available against . . . the prison"); *Merth v. Mgmt. & Training Corp.*, No. 1:21-cv-01185 JLT BAK, 2022 WL 783962, at *4 (E.D. Cal. Mar. 11, 2022) (holding that plaintiff's *Bivens* "claims against MTC, as a private corporation, fail as a matter of law").

### 3.  Martinez-Felix has failed to plead any facts demonstrating Defendants Hills and Romero were personally involved in an alleged constitutional violation.

In his Complaint, Martinez-Felix names K. Hills and D. Romero as Defendants, alleging that they "cover[ed] up and advocat[ed] their interest contrary to policy and Statutory authorities for kick-backs and/or promotion upon their retirement from the (BOP)."  Compl. 9.  The Court asked Martinez-Felix to specify the actions Defendants Hills and Romero took that he believes violated his constitutional rights and to describe how he was harmed by those actions, but Martinez-Felix merely responded "N/A."  Questionnaire 13–14.

"*Bivens* provides a cause of action against federal agents only in their individual capacities and requires a showing of personal involvement."  *Guerrero-Aguilar v. Ruano*, 118 F. App'x 832, 833 (5th Cir. 2004) (per curiam).  Martinez-Felix's conclusory allegation against Defendants Hills and Romero fails to demonstrate they were personally involved in any constitutional violation.  The district judge should therefore dismiss Martinez-Felix's claims against K. Hills and D. Romero.  *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *see also Guerrero-Aguilar*, 118 F. App'x at 833 (observing that *Bivens* and 42 U.S.C. § 1983 actions are analogous (citing *Izen v. Catalina*, 382 F.3d 566, 570 n.3 (5th Cir. 2004)).

*4.   Martinez-Felix cannot assert claims on behalf of other inmates.*

In his Complaint, Martinez-Felix maintains that unnamed Dalby Unit officials hire "inmates to assault" other inmates.  Compl. 8.  Martinez-Felix acknowledges, however, that he was not assaulted under such circumstances.  Questionnaire 12.  Martinez-Felix has no standing to assert claims on behalf of other prisoners.  *See Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("[O]ne may not claim standing in this Court to vindicate the constitutional rights of some third party."); *Cardona v. Briones*, No. SA–11–CA–781–OG, 2012 WL 12897203, at *7 (W.D. Tex. Mar. 9, 2012) (recommending dismissal of federal prisoner's claims asserted on behalf of other individuals), *R. & R. adopted by* 2012 WL 12898024 (W.D. Tex. Apr. 13, 2012).  And to the extent he seeks relief for himself, he has pleaded nothing more than a bald claim devoid of factual support.  Compl. 8; Questionnaire 12; *see Sias*, 146 F. App'x at 720.  Thus, the district judge should dismiss his claim.

*5.   Martinez-Felix's medical care claims are barred because* Bivens *does not extend to employees of a private corporation.*

Although Martinez-Felix does not expressly cite the Eighth Amendment, he appears to premise his medical care claims on a theory of deliberate indifference to serious medical needs. *See, e.g.*, Compl. 6 ("The cruel and unusual punishment medical negligence Plaintiff alleges, that Defendants acted with deliberate[] difference of his serious medical needs . . . .").

In *Carlson*, the Supreme Court held that a deceased prisoner's estate could maintain an Eighth Amendment deliberate indifference claim against federal officials under *Bivens*.  446 U.S. at 17–18.  The fact that *Carlson* extended *Bivens* to permit an Eighth Amendment medical care claim in that context, however, does not mean that Martinez-Felix may rely on *Carlson* in this circumstance.  *Nabaya v. Bureau of Prisons*, No. 3:19-cv-215-L-BN, 2020 WL 7029909, at *3 (N.D. Tex. Oct. 7, 2020) ("Although the Supreme Court recognized a *Bivens* remedy under the

Eighth Amendment in *Carlson*, this does not mean all Eighth Amendment claims have a *Bivens* remedy." (quoting *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017))), *R. & R. adopted by* 2020 WL 7027470 (N.D. Tex. Nov. 30, 2020).

Indeed, in *Minneci v. Pollard*, the Supreme Court held that a prisoner may not recover against individual employees of a privately-operated prison where state tort law provides an adequate alternative remedy for the claimed constitutional violation.  *See* 565 U.S. 118, 125–31 (2012).  State tort law affords an adequate alternative remedy if it "provide[s] roughly similar incentive for potential defendants to comply with" the constitutional right in question "while also providing roughly similar compensation to victims of violations" as would a *Bivens* cause of action.  *Id.* at 130.

Since *Minneci*, "[n]either the Supreme Court nor any circuit . . . has recognized a cause of action under *Bivens* against employees of privately run prisons or private entities acting under color of federal law."  *Gonzalez v. Gillis*, No. 21-60764, 2022 WL 1164806, at *1 (5th Cir. Apr. 19, 2022) (per curiam); *see, e.g.*, *Nyabwa v. Unknown Jailers at Corr. Corp. of Am.*, 700 F. App'x 379, 380 (5th Cir. 2017) (per curiam) (explaining that under *Minneci*, "a federal prisoner cannot pursue a *Bivens* claim against" a private prison contractor "because where the challenged conduct is of a kind that typically falls within the scope of traditional state tort law . . . , the prisoner must seek a remedy under state tort law instead of under *Bivens*" (internal quotation marks and citation omitted)); *Ayala-Gutierrez v. Doe*, 697 F. App'x 285, 286 (5th Cir. 2017) (per curiam) (observing that a privately-operated prison "and its employees cannot be liable as private actors under *Bivens*" for alleged Eighth Amendment violations); *Oriakhi v. Geo Grp., Inc.*, 579 F. App'x 292, 292 (5th Cir. 2014) (per curiam) ("A *Bivens* suit may not be brought against a private corporation like GEO

Group or its employees if the conduct is the type that typically falls within the scope of traditional state tort law." (footnote omitted)).

As to Martinez-Felix's medical care claims, Texas state law "imposes general tort duties of reasonable care (including medical care) on prison employees." *Minneci*, 565 U.S. at 128 (citing *Salazar v. Collins*, 255 S.W.3d 191, 198–200 (Tex. App.—Waco 2008, no pet.)). For example, "a prisoner may pursue medical malpractice claims against a prison healthcare provider," or a claim "for monetary damages against a prison employee" based on an Eighth Amendment violation. *Smith v. Rolling Plains Det. Ctr.*, No. 1:20-CV-00182-BU, 2021 WL 6137159, at *4 (N.D. Tex. July 7, 2021), *R. & R. adopted by* 2021 WL 6135476 (N.D. Tex. Dec. 29, 2021); *see Mireles v. MTC Willacy Cnty. Reg'l Det. Facility*, No. 1:19-cv-197, 2020 WL 4678433, at *6 (S.D. Tex. July 23, 2020) (stating that "Texas state tort law provides an adequate remedy for claims involving [medical malpractice] and medical care" and citing Texas state court cases for support), *R. & R. adopted by* 2020 WL 4677402 (S.D. Tex. Aug. 12, 2020).

Thus, Martinez-Felix cannot pursue his Eighth Amendment medical care claims against the private entity Defendants—i.e., John Doe, Warden, Health Service Administrator; John Doe, Clinic Director; John Doe, medical personnel; Dr. Reddick; Dr. Flores; and Nurse Flores. *See Minneci*, 565 U.S. at 131; *Mireles*, 2020 WL 4678433, at *6 (dismissing plaintiff's medical care claims "against MTC Willacy and Valley Baptist employees"); *Smith*, 2021 WL 6137159, at *4–5 (recommending dismissal of federal detainee's denial of adequate medical care claims against employees of private prison contractor). The undersigned therefore recommends that the district judge dismiss such claims.

As to Martinez-Felix's remaining claims against the private entity Defendants—taxation of commissary items, falsified records, failure to respond to grievances, violations of MTC and/or

BOP policy, and discrimination—the undersigned finds those are not barred from review by *Minneci*, as it is unclear whether they fall within the scope of traditional state tort law. The undersigned therefore addresses those claims below.[10]

> 6. *Martinez-Felix cannot state a cognizable claim based on the purported taxation of commissary items.*

Martinez-Felix alleges that the Dalby Unit Warden impermissibly charged tax on commissary items, including medical supplies, and he requests reimbursement of those taxes. *See* Compl. 8–9; Questionnaire 13. A plaintiff has no constitutional right to purchase commissary items tax free and cannot allege a viable civil-rights claim without an accompanying constitutional violation. *See, e.g.*, *Capers v. Dorthy*, No. 20-0213, 2020 WL 1482466, at *2–3 (W.D. La. Mar. 3, 2020) (recommending dismissal of prisoner's complaint that defendants charged him sales tax on commissary purchases due to the lack of a constitutional violation), *R. & R. adopted by* 2020 WL 1481550 (W.D. La. Mar. 23, 2020); *Goldsmith v. Strickland*, No. 3:14cv626-FKB, 2015 WL 5040008, at *4 (S.D. Miss. Aug. 26, 2015) ("[Plaintiff's] claim regarding payment of a sales tax by prisoners on items purchased at the commissary does not rise to the level of a constitutional violation."); *Verrette v. Randolph*, No. 08-1200, 2009 WL 103715, at *9 (E.D. La. Jan. 14, 2009) ("[R]egardless of who operates the commissary, the collection of sales taxes simply does not violate plaintiff's rights.").[11]

---

[10] As discussed herein, the remainder of Martinez-Felix's claims fail to implicate the Constitution. The Court therefore does not determine whether *Bivens* extends to these claims. *See Vetcher v. Immigr. & Customs Enf't*, No. 1:16-CV-0164-C, 2018 WL 11174809, at *7 (N.D. Tex. Nov. 29, 2018) ("In order to assert a claim for damages for violation of federal constitutional rights under *Bivens*, a plaintiff must set forth facts in support of both of its elements," including whether plaintiff suffered a "deprivation of a right secured by the Constitution or laws of the United States.").

[11] Although the foregoing cases discussed plaintiffs' claims under § 1983, they are applicable to Martinez-Felix's claim. *See Izen*, 382 F.3d at 570 n.3.

Therefore, Martinez-Felix fails to state a constitutional violation based on the alleged collection of tax on commissary items, and the district judge should dismiss this claim along with Martinez-Felix's request for reimbursement of taxes paid.

7. *Martinez-Felix's assertion that the Dalby Unit medical staff and Dr. Reddick falsified records fails to state a viable constitutional claim.*

In his Complaint, Martinez-Felix generally asserts that the Dalby Unit medical department "[r]ubber [s]tamp[s] inmates [sic] medical records to avoid spending any additional funds to administer the proper care."  Compl. 8.  He further states that Dr. Reddick authors fraudulent reports.  *Id.*  The Court asked Martinez-Felix to expand factually on his claim, to which Martinez-Felix responded that, "Dr. Reddick listed multiple inmate deaths at Dalby as a result of COVID, when they died as [a] result of medical neglect by staff."  Questionnaire 8.  Martinez-Felix contends that as a result of Dr. Reddick's actions, he "was neglected necessary medical surgery, care, and treatment by Dr. Reddick," and "necessary surgery has not been performed, three years later."  *Id.* at 9.

To the extent Martinez-Felix's claims against Dr. Reddick and the Dalby Unit medical staff ultimately relate to Martinez-Felix's alleged lack of adequate medical care, the undersigned concludes such claim is barred for the same reasons discussed in Section II.D.5 above.  *See Minneci*, 565 U.S. at 129–30 (providing that the state tort law remedy and "potential *Bivens* remedy need not be perfectly congruent," as long as they "provide roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations").  In addition, any attempt by Martinez-Felix to assert claims on behalf of other inmates is without merit.  *See supra* Section II.D.4.

Finally, any stand-alone claim based on the alleged authoring or maintenance of false prison records does not, without more, violate the Constitution.  *See generally Henderson v.*

17

*Buttross*, No. A-17-CV-436-LY, 2017 WL 2391806, at *3 (W.D. Tex. June 2, 2017) ("Filing or notarizing fake documents—without evidence that the state actor knowingly participated—is insufficient to allege state action as required under § 1983."); *Fountain v. Thaler*, No. 6:13cv958, 2015 WL 5168775, at *11 (E.D. Tex. Sept. 2, 2015) (dismissing prisoner's claim that defendants falsified grievances because such action does not violate the Constitution).

8.  *Martinez-Felix cannot state a valid constitutional claim based on the Dalby Unit Warden's purported failure to respond to grievances.*

Martinez-Felix asserts that grievance complaints "mysteriously disappear" at the Dalby Unit.  Compl. 8.  Specifically, Martinez-Felix alleges that he "wrote grievances to the [Dalby Unit W]arden," but the Warden never answered his grievances.  Questionnaire 9.  In Martinez-Felix's view, the Warden's ostensible failure to respond violated his due process rights and denied him access to the courts, but Martinez-Felix does not provide further factual support for his claims. *See id.* at 9–10; Compl. 8.

Martinez-Felix cannot state a constitutional violation based on the Warden's failure to respond to his grievances.  Initially, the Court observes that prisoners generally possess no constitutional right to have grievances resolved to their satisfaction.  *See Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir. 2012) (per curiam) (rejecting appellant's claim that prison official's failure to conduct an adequate investigation into his grievance implicated due process concerns "because [appellant] lacks a protected interest in a favorable resolution to his grievances"); *Geiger*, 404 F.3d at 374 (stating that because a "[prisoner] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction[,] . . . any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless").

Moreover, the Warden's alleged failure to respond to Martinez-Felix's grievances, standing alone, does not rise to the level of a constitutional violation.  *Holliday v. Norwood*, No.

18

6:15-CV-06041-SOH-MEF, 2017 WL 3699758, at *3 (W.D. Ark. July 20, 2017) (dismissing prisoner's claim that defendant "did not respond to grievances" because the failure to answer grievances, standing alone, does not violate the Constitution); *Jackson v. Wakefield*, No. 9:06cv62, 2006 WL 2038548, at *4 (E.D. Tex. July 20, 2006) (explaining that two unanswered I–60 forms did not rise to the level of deliberate indifference because the submission of the forms did not necessarily mean prison officials received them nor did it negate the possibility the forms were received but negligently unanswered or otherwise lost); *Tims v. Wilson*, No. 700CV0181BC, 2001 WL 1352686, at *3–4 (N.D. Tex. Oct. 31, 2001) (holding that one unanswered I–60 request did not demonstrate defendants' deliberate indifference, where medical records showed defendants provided prisoner substantial medical care); *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) ("Because a[n] [institution] grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the [institution's] grievance procedure is not actionable under § 1983.").  Martinez-Felix pleads no facts indicating how the Warden's purported failure to respond violated his due process rights or otherwise harmed him, other than making the speculative statement that he "could have been in danger and [the Warden] would have never done anything."  Questionnaire 10.

As to Martinez-Felix's assertion that the Warden's purported failure to respond to grievances denied Martinez-Felix's right to access the courts, he likewise has failed to state a claim.  First, Martinez-Felix's claims are wholly conclusory and cannot support a constitutional claim.  He does not plead any facts suggesting a connection between the Warden's alleged conduct and a lack of access to the courts.  *See Sias*, 146 F. App'x at 720.  Moreover, to state a viable access-to-courts claim, a plaintiff must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendant's actions.  *See*

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Johnson v. Rodriguez*, 110 F.3d 299, 310–11 (5th Cir. 1997); *see also Taylor v. Cabano*, 205 F. App'x 206, 207 (5th Cir. 2006) (per curiam) (affirming district court's dismissal of prisoner's complaint for failure to exhaust administrative remedies, where prisoner did "not give any specifics concerning his 'rejected' or 'ignored' grievances, nor [did] he explain how he exhausted administrative remedies by filing those grievances").  Martinez-Felix has not demonstrated any injury arising from the Warden's alleged conduct.  *See* Questionnaire 10.

For these reasons, the undersigned recommends that the district judge dismiss Martinez-Felix's claims based on the Warden's alleged failure to respond to grievances.  *See, e.g.*, *Barela v. Underwood*, No. 3:18-CV-2353-G-BH, 2019 WL 4648262, at *7–8 (N.D. Tex. July 30, 2019) (recommending dismissal of federal prisoner's claim that defendant's alleged interference with prisoner's grievances violated his right to access the courts and due process rights), *R. & R. adopted by* 2019 WL 4643587 (N.D. Tex. Sept. 23, 2019).

> *9. Any alleged failure to comply with MTC or BOP policy does not rise to the level of a constitutional violation.*

To the extent Martinez-Felix intends to assert a stand-alone claim based on Dalby Unit officials' purported violation of MTC or BOP policy, he cannot state a cognizable constitutional claim.  "A prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam).  Without more, "the mere failure of . . . [prison] officials to follow their regulations" is not a constitutional violation. *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam).  Martinez-Felix's conclusory allegation in this regard fails to demonstrate an actionable violation, and the district judge should therefore dismiss the claim.  *See, e.g.*, *Gibson v. Fed. Bureau of Prisons*, 121 F.

App'x 549, 551 (5th Cir. 2004) (per curiam) ("A violation of a prison regulation without more does not state a constitutional violation."); *McKnight v. Cruz*, No. 3:11–CV–0615–G (BK), 2011 WL 3501726, at *2 (N.D. Tex. July 12, 2011) (recommending dismissal of federal prisoner's claim against warden based on a violation of BOP policy), *R. & R. adopted by* 2011 WL 3501349 (N.D. Tex. Aug. 8, 2011).

> *10. Martinez-Felix's conclusory references to Dalby Unit officials' alleged discrimination does not amount to a constitutional violation.*

In his Complaint and questionnaire responses, Martinez-Felix makes general reference to Dalby Unit officials' alleged discrimination. *See* Compl. 8–9; Questionnaire 10. Martinez-Felix does not specify, however, that he personally suffered discrimination, or that he was otherwise harmed by the unlawful acts. *See* Compl. 8–9; Questionnaire 10.

To establish a violation of his right to equal protection, Martinez-Felix "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (quoting *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007)). Martinez-Felix's "amorphous conclusion of discrimination" is not sufficient to plead an equal-protection claim. *Eltayib v. Cornell Cos. Inc.*, 533 F. App'x 414, 415 (5th Cir. 2013) (per curiam); *see Sias*, 146 F. App'x at 720. The district judge should therefore dismiss any claim based on an alleged equal-protection violation.

**E. The Court should decline to exercise supplemental jurisdiction over any state law claims.**

Martinez-Felix appears to assert a state law claim for medical malpractice. Compl. 7. Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the Court has determined that all of Martinez-Felix's federal claims should

be dismissed, the undersigned recommends that the district judge decline to exercise § 1367 supplemental jurisdiction over Martinez-Felix's state law claims. *See, e.g.*, *Lizotte v. Leblanc*, 456 F. App'x 511, 513 (5th Cir. 2012) (per curiam) (affirming district court's dismissal of plaintiff's state law claims for negligence and retaliation where court had properly dismissed all claims over which it had original jurisdiction and therefore "had an adequate basis for declining to exercise supplemental jurisdiction"); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 (5th Cir. 2001) (noting that a "district court may refuse to exercise supplemental jurisdiction" over state law claims where court dismisses claims giving rise to original jurisdiction); *Kapelioujnyi v. Dixon*, No. 5:09-CV-100-BG, 2010 WL 11538619, at *2 (N.D. Tex. Mar. 22, 2010) (declining to exercise supplemental jurisdiction over federal prisoner's state law claims, where court dismissed prisoner's federal law claims).

## III.   <u>Recommendation</u>

For these reasons, the undersigned recommends that the United States District Judge dismiss with prejudice Martinez-Felix's Complaint and all claims therein, except for Martinez-Felix's FTCA and state-law claims, which should be dismissed without prejudice.

## IV.   <u>Right to Object</u>

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the

magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 25, 2022.

_____

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**